CASE 53—PETITION ORDINARY—JANUARY 30.

## Letton, &c., vs. Young, &c.

APPEAL FROM BOURBON CIRCUIT COURT.

1. A new trial should not be granted because of excessive damages, especially in actions of slander and the like, unless the damages should be so great as to strike the mind at first blush as having been superinduced by passion or prejudice. (4 *Litt.,* 118; 2 *Marsh.,* 365; *Civil Code, sec.* 369.) Here the court refused to disturb upon that ground a verdict, in slander, of $4,000.

2. In an action of slander, when words, oral or written, uttered by the defendant, actionable in themselves, other than the publication declared on, are offered in evidence to prove malice, the court must caution the jury that they are not to increase the damages on that account.

3. Y. and wife brought an action of slander against L. and wife for slanderous words alleged to have been spoken by Mrs. L. concerning Mrs. Y. The plaintiffs

Letton, &c., vs. Young, &c.

introduced evidence conducing to prove the speaking of the words by Mrs. L., and that they were similar in substance to those contained in an anonymous letter said to have been published by her, and that she had caused it to be written and sent to Mrs. Y. Plaintiffs, after introducing evidence conducing to show its publication, offered the letter in evidence, to which defendants objected. The letter contained libelous imputations against both Mrs. Y. and her daughter. *Held*—That the letter was admissible to show malice against Mrs. Y., but not for any other purpose; that the court should have cautioned the jury that they were not to increase the damages on account of the letter, or give it any effect whatever in estimating the amount of damages, which caution should accompany its admission; and that so much of it as related to the daughter of the plaintiff could not be considered as evidence against the defendants for any purpose.

4. In such case an instruction was given to the jury to the effect that the letter in question was only admissible to show malice, and for no other purpose. And in another instruction the jury were told that they had a right to award such damages to the plaintiffs as they thought them entitled to from *all the facts and circumstances* proved in the case. *Held*—That the caution to the jury in respect to the effect to which the letter was entitled was not sufficient.

5. Errors of the court in granting or refusing instructions, unless excepted to at the time, are not only unavailing for a new trial below, but are likewise unavailing for reversal in the court of appeals.

6. An instruction in an action of slander hypothecated upon the belief of the jury "that the slanderous words set forth in the petition, or any part of them," were spoken, but which fails to inform the jury what words set out in the petition were slanderous and actionable, is misleading, especially if the petition contain expressions charged to have been spoken which are not slanderous.

7. It is error to instruct the jury "that if they believe any witness has sworn falsely and knowingly as to any material fact, they are *bound* to disregard his testimony altogether." Whenever a person is held competent, and allowed to testify as a witness, the jury are the exclusive judges of his credibility, and may give such weight to his evidence as they may, under the circumstances, think it deserves. (1 *Starkie*, 454; 1 *Greenleaf*, 380.)

James B. Beck, for appellants, cited 15 *B. Mon.*, 102.

R. W. Woolley, on same side, cited 2 *Bibb*, 473; *Litt. Sel. Cases*, 188; *Hardin*, 529; 2 *Willes*, 87; *Civil Code*, secs. 354, 355; 1 *Bibb*, 109; *Morgan vs. Rodes*, *MS. opin. Summer Term*, 1857; 1 *Greenleaf Ev.*, sec. 160; 1 *Munford*, 22; 5 *Humphreys*, 8; 18 *Conn.*, 321; 27 *Miss.*, 299; 5 *East*, 463; 7 *Term Rep.*, 17; 2 *East*, 425; 1 *Price*, 76; *Starkie on Slander*, 218; 1 *Binney*, 86; 2 *Greenleaf Ev.*, sec. 421; 2 *Es. Nisi Prius*, 1st *Amer. ed.*, 106; 3 *Dana*, 139; 8 *B. Mon.*, 18; 9 *Dana*, 171; 15 *B. Mon.*, 105.

Alexander & Hanson, on same side, cited 15 *B. Mon.*, 105.

A. J. James, on same side, cited 2 *Greenleaf Ev.*, 414; 15 *B. Mon.*, 105.

M. C. Johnson, for appellees, cited *Civil Code, secs.* 369, *subdiv.* 8, 364, 372 ; 41 *Maine,* 149 ; 28 *Penn. State Rep.,* 271 ; 28 *Ala.,* 655 ; *Ib.,* 188 ; 29 *Ib.,* 471 ; 36 *Eng. Law & Eq.,* 518 ; 8 *Blackford,* 334–5 ; 32 *New Hamp.,* 458 ; 3 *Dana,* 43, 44.

G. & R. T. Davis, on same side, cited 2 *Burr.,* 936 ; 2 *Wilson,* 307 ; 2 *Salk.,* 644, 646 ; 2 *Term Rep.,* 4 ; 4 *Ib.,* 468 ; *Bos. & Pul.,* 338 ; 6 *Mon.,* 61 ; 3 *J. J. Mar.,* 717 ; 6 *Dana,* 214 ; 1 *B. Mon.,* 46 ; 12 *Ib.,* 54 ; *Starkie on Ev.,* 582 ; *Gorham vs. Carpenter, MS. Opin.*; 3 *Dana,* 432 ; 8 *B. Mon.,* 19.

JUDGE STITES DELIVERED THE OPINION OF THE COURT :

This was an action of slander, brought by Young and wife against Letton and wife.

The slanderous words are alleged to have been spoken by Mrs. Letton, of and concerning Mrs. Young. The defendants pleaded not guilty. Upon a trial in the circuit court, Young and wife obtained a verdict and judgment for $4,000 ; and a new trial having been refused, Letton and wife have appealed.

The grounds presented for a new trial are substantially the same relied on for reversal, and are as follows :

1. That the damages were excessive, and the result of passion and prejudice.

2. That the circuit court erred in admitting improper evidence for the plaintiffs, and in excluding evidence offered by the defendants ; and .

3. That there was error in granting and refusing instructions to the jury.

It may be said in regard to the grounds recited, that they are properly grounds for a new trial, and not available in arrest of judgment ; though it seems that in this case they were, except the first, presented in arrest of judgment.

We suppose, however, that they were designed to apply both to the motion in arrest of judgment and that for a new trial, and so they will be considered.

1. It has been repeatedly held by this court that a new trial should not be granted because of excessive damages, and especially in actions of this character, unless the damages should be so great as to strike the mind at first blush as having

been superinduced by passion or prejudice. (4 *Littell*, 118 ; 2 *Marshall*, 365.)

The Civil Code embodies the same rule, and only authorizes a new trial upon the ground of excessive damages, " when appearing to have been given under the influence of passion or prejudice." (*Civil Code, sec.* 369.)

There is, in our opinion, nothing in this record which will authorize the application of this rule to the present case ; and the judgment cannot, therefore, be disturbed upon the ground that the damages were excessive.

2. This objection is, we think, well taken, and must prove fatal to the judgment.

As we have seen, the words are alleged to have been spoken of Mrs. Young.

During the progress of the trial, the plaintiffs introduced evidence conducing to prove the speaking of the words by Mrs. Letton, and that they were similar in substance to those contained in an anonymous letter said to have been published by her. They also introduced evidence tending to show that she had caused the letter to be written and sent to Mrs. Young ; and after introducing proof conducing to show its publication, then offered the letter in evidence to the jury.

The introduction of the letter was objected to by appellants ; but their objection was overruled, and the letter allowed to go to the jury as evidence, and that, too, without any accompanying explanation or caution by the court as to the effect to which it should be entitled.

The letter was grossly abusive of Mrs. Young, and contained several of the words complained of in the petition. It was also abusive of Fanny Young, a daughter of Mrs. Young, and contained many libelous imputations against her, and would, if published by Mrs. Letton, have of itself furnished a cause of action to both mother and daughter.

The admissibility of the letter for the purpose of showing malice against the mother cannot be doubted ; but it was clearly inadmissible for any other purpose.

The question arises, however, whether it was not the duty of the court, at the time of its admission, to caution the jury as

to its effect, so that they might not give any undue weight to it in considering the amount of damages; and also to admonish them specially that so much of the letter as related to Fanny Young could not be considered as evidence against appellants for any purpose whatever.

It is said by Mr. Starkie, in his work on slander, (*p.* 398,) when treating of this subject, "that, since the object of such evidence is to enable the jury to ascertain whether the defendant acted from good or evil motives, it is not material whether the instances of the defendant's ill will are or are not immediately connected with the publication in question; but a judge will in such case instruct the jury to confine themselves in their assessment of damages to the words stated in the declaration."

And in Greenleaf on Evidence, (*vol.* 2, *secs.* 271, 418,) it is laid down that "in actions of slander, evidence of any language uttered by the defendant, whether written or oral, showing ill will to the plaintiff, whether spoken before or after the publication complained of, may be given, for the purpose of proving malice." "But (continues the author) if such collateral evidence consists of matter actionable in itself, the jury must be cautioned not to increase the damages on that account." The same rule was announced with approbation by Chief Justice Parker in *Bodwell vs. Swan and wife,* (3 *Pickering,* 378.)

This point was raised in this court in *Campbell vs. Thompson,* from Bourbon county, (*MS. Opin. Winter Term,* 1854.)

In that case the plaintiff was allowed to prove the utterance of the words complained of after the suit had been brought; and the court below failed, when the evidence was admitted, or afterwards, to caution the jury as to its effect. This was complained of as error. And this court held it to be error, remarking, in regard to the rule referred to, "that such cautionary words should accompany the admission of the evidence, in order, so far as practicable, to limit its effect to the legitimate purposes of its admission."

This case, it is true, differs somewhat from *Campbell vs. Thompson supra,* because in that there was no caution whatever, either when the evidence was admitted or subsequently; when here there was an instruction given to the effect that the letter

in question was only admissible to show malice, and for no other purpose.

This instruction is, however, silent upon the subject of damages, and fails to caution the jury in terms not to increase the damages on account of the letter; and for this reason the caution contained in the instruction, if it can be called a caution on that subject, could have been of no practical benefit to appellants in the matter of damages; for, in another instruction given at appellees' instance, and the only one relating to the question of damages, the jury are told, in so many words, that they had the right to award such damages to the plaintiffs as they thought them entitled to from *all the facts and circumstances* proved in the case, without any allusion being made therein to the letter or the effect to which it was entitled in the assessment of damages.

For the purpose of showing malice the letter was an important fact, and was doubtless so considered by the jury. And it may be easily conceived what weight they would give to it, when, by the instruction referred to, they were told, in effect, to consider *all* the facts proved before them, and nowhere cautioned, in terms or in effect, against increasing the damages on account of the letter.

We do not wish to be understood as saying that the failure to admonish the jury as to the effect of the letter at the time of its introduction, might not have been cured by an explicit instruction to the same effect at a subsequent stage of the trial, although the warning should have accompanied its admission; but we have no hesitation in saying, that in this case there was no sufficient caution at any time ; and inasmuch as the appellants objected to the letter, and it was only admissible for one purpose, our opinion is that the court erred to their prejudice in not explicitly admonishing the jury, at some time before their retirement, not to give it any effect whatever in estimating the amount of damages.

Besides, in view of the peculiar character of the letter, and in consideration that if published as charged, it furnished a distinct cause of action to either mother or daughter, we think the jury should have been explicitly told that the words therein

contained respecting Fanny could be considered for no purpose whatever in the action brought by the mother.

We are aware of no principle which tolerates the introduction of evidence of a libel or slander by a defendant against one person, in order to establish malice on the part of such defendant against another.

If proof of slander against the daughter is allowable to show malice against the mother in an action brought by the latter, why not permit the daughter in any action she might bring for slander against the same defendants to prove that they slandered the mother?

Would it be contended that oral evidence of a slander against one person would be admissible for any purpose in an action by another? If not, why, in a like case, allow evidence of libelous matter?

It is true that the letter in question is an entirety, and perhaps unintelligible if read in detached sentences; and it may have been, and doubtless was, necessary to an understanding of its contents that the whole should be read; but this very necessity, so far from furnishing any justification for not admonishing the jury as to what was said respecting Fanny Young, only demonstrates the propriety of such precaution.

3. In regard to the alleged error in refusing and granting instructions, we are confined to the action of the court in reference to the eleventh instruction, which was refused.

There was no exception taken by either party to the granting or refusal of any other instruction.

The Civil Code (*sec.* 369, *sub-div.* 8) only permits errors of law occurring at the trial to avail for a new trial when they have been excepted to by the party complaining. And section 364 declares that the party objecting to a decision of the court upon a *matter* of law—not an *issue* of law formally raised by demurrer—must except at the time the decision is made, but may have time to reduce his exception to writing; or, as provided in section 366, may cause it to be noted upon the order book.

Errors of the court in granting or refusing instructions are " errors of law occurring at the trial," and obviously within the letter and intent of the provisions of the Code *supra*. And

as held by this court at the present term, in *Kennedy vs. Cunningham*, such errors, unless excepted to ·at ·the time, are not only unavailing for a new trial below, but likewise unavailing for reversal in this court.

The eleventh instruction, the refusal of which was alone excepted to, was properly denied.

The principle of law attempted to be embodied therein was correctly laid down in instruction number two, given at appellants' instance; and if that which was refused were otherwise unobjectionable, there was no use in granting two instructions to the same effect.

Inasmuch, however, as there must be a new trial, we deem it proper to say with regard to the first and fourth instructions granted at the instance of appellees, but not excepted to at the proper time, that they are both, in our judgment, erroneous.

The first fails to inform the jury what words set out in the petition were slanderous and actionable, and in this was misleading, especially as several expressions contained in the petition ·are, in themselves, neither actionable nor slanderous.

The fourth is in conflict with the fifth, and in substance says to the jury, " that if they believe any witness has sworn falsely and knowingly as to any material fact, they are *bound* to disregard his testimony altogether."

The effect of this instruction was to deprive the jury of their peculiar prerogative of determining the credibility of the witnesses; and, at the same time, to enable them, collaterally, to pronounce upon the competency of any witness they might believe guilty as hypothecated in the instruction, and thus to invade the province of the court.

Persons who have been convicted of certain offenses, perjury, &c., are declared incompetent witnesses by the Civil Code, (*sec.* 670;) but certainly nothing less than a formal conviction would work such incompetency. Not even the verdict of guilt by a jury, sworn to try such person upon a direct accusation of the offense of false swearing or perjury in the same case, unless supported by a judgment of conviction, would render such person incompetent. Much less, therefore, ought the mere belief of a jury, in a case where the guilt of the person called

to testify is collaterally and not directly involved, to disqualify him. Yet such would be the effect of the instruction, provided the jury believed any such witness swore falsely in regard to any material fact about which he testified.

Whether a witness violates his oath is for the jury to judge. If they believe him guilty of such violation, they will of course give but little, if any, weight to any statement he may make. But this is with them. They are not bound to disregard every other statement of such witness.

A witness may swear falsely as to some one fact, and yet, in regard to other facts, be so corroborated by other testimony and circumstances disclosed upon the trial, that the jury might be induced to give some credence to his statements respecting them. Indeed the corroboration might be so powerful as to induce full credence as to such statements.

Whenever a person is held competent, and allowed to testify as a witness, the jury are the exclusive judges of his credibility, and may give such weight to his evidence as they may, under the circumstances, think it deserves. (1 *Starkie*, 454; 1 *Greenleaf on Ev.*, sec. 380.)

That there are certain well established and familiar rules intended for the guidance of juries in weighing and determining the credibility of witnesses, and which courts may, and should, expound to them, as the peculiar exigencies of the case may demand, is not at all doubted. But that there is any rule which compels a jury, in any state of case, to disregard or reject the testimony of a witness who is competent and has testified, we are unwilling to concede.

The point just noticed did not, as is supposed by appellees' counsel, arise in the case of *Gorham vs. Carpenter*, decided at the Winter Term, 1857. It is true that an instruction similar in import to that given here, was granted in that case by the circuit judge, but, as the record shows, it was by the consent of both parties, and of course furnished no question for adjudication by this court. The case turned here altogether upon other questions.

For the errors indicated the judgment is *reversed*, and cause remanded for a new trial and further proceedings not inconsistent with this opinion.