## ADA T. MUNROE *vs.* CITY OF WOBURN.

Middlesex.  November 11, 1914. — January 8, 1915.

Present: RUGG, C. J., BRALEY, DE COURCY, & CROSBY, JJ.

*Damages,* Indemnity for loss and expense due to abandoned taking.  *Eminent Domain.  Evidence,* Competency.  *Words,* "Loss."

In that part of R. L. c. 48, § 69, which provides for an indemnity to a person who has suffered loss or been put to expense by reason of proceedings relating to the taking of land for a town way or a private way, and which by § 94 of the same chapter is made applicable to takings for similar purposes by a city, the substitution of the word "loss" for the word "trouble," which was used in the earlier revisions, did not change any of the elements of damage which are recoverable and which were defined in *Whitney* v. *Lynn,* 122 Mass. 338.

Where a city by proper proceedings for the purpose of widening a street made a taking of a strip of land from the side of a lot at the corner of that street and another street, which taking became void under R. L. c. 48, § 92, because the city for two years failed to take possession of the land for the purpose of widening the street, the owner of the land, who, before the taking, had made plans and arrangements for the erection of a new brick building upon the premises to take the place of a building which recently had been destroyed by fire, and who because of the taking had been compelled to abandon such plans and arrangements and had been deterred from erecting any building upon the premises during the two years, cannot recover, in a petition under R. L. c. 48, §§ 69, 94, as "indemnity for loss or expense incurred by the proceedings" loss of rentals which he would have received from the proposed building, loss by reason of inability, caused by the taking, to make an advantageous sale of the property, amounts paid to architects for changes in building plans and amounts paid as taxes during that period either upon the whole lot or upon the portion included in the taking.

At the trial of a petition under R. L. c. 48, §§ 69, 94, for indemnity for loss or expense incurred by proceedings resulting in a taking by a city of land for the widening of a street which became void under § 92 of that chapter by reason of the failure of the city to take possession of the land for that purpose, it is

proper for the judge to refuse to permit the petitioner to be asked, "What do you consider that your loss has been by the action of the city council in taking this land?" and to refuse to permit a qualified expert, testifying for the petitioner, to be asked, "What is your estimate of the loss to the petitioner by the action of the city council in that taking?" because the questions would permit the witnesses to include in their answers elements of damage not contemplated by the statute.

PETITION, filed in the Superior Court on November 23, 1911, under R. L. c. 48, §§ 69, 94, for indemnity for loss and expense incurred by proceedings of the city of Woburn in taking for the widening of Union Street a strip of land from a lot of the petitioner at the corner of Main Street and Union Street in that city, the taking having become void under § 92 by reason of the respondent having failed for more than two years to make an entry for possession of the land.

In the Superior Court the case was tried before Quinn, J. It appeared that on February 18, 1908, there was a building on the petitioner's premises which was leased to a tenant who used it as a department store. On that day the building was destroyed by fire. On December 18, 1908, the order for the taking of the petitioner's land, above referred to, was passed.

The petitioner offered to show that immediately after the fire and before the taking by the city she had made arrangements to build a new brick building upon her land, and she had employed an architect who made plans to cover the whole of the frontage of her land on Main Street and she offered evidence of the sum of money that she had paid the architect therefor; that she then received notice of the action of the city council upon the matter of the taking, which interfered with her erecting the building that she had proposed to build and made it necessary for her to change her plans, which put her to expense; that she obtained estimates from builders of the cost of a building on the plans covering the whole lot and on the altered plan covering only the portion not included in the taking; that if she built the smaller building she would not be using the land in the most advantageous way, and if later no entry were made to complete the taking it would have been expensive and unprofitable to build a separate building twelve feet in width; that previous to the taking she had prospective tenants ready to take the building as soon as completed; that she also had purchasers for the land; that the act of

the city in making a taking made it necessary for her to erect a building which would be a less profitable investment upon a narrower frontage or to build over the whole lot with knowledge of the taking which would prevent her recovery of damages for the portion of the building built over the land taken; that she was deprived of the use of the whole lot of land as well as the portion covered by the taking.

The petitioner further offered to show that she lost the rentals from the proposed building and lost the use of the land during the two years after the passage of the order of taking and the latest date on which the city council could complete the taking by an entry, and to show the amount of that loss. She also offered evidence of the amount of taxes paid on the land by her during the two years while the taking of the city was in force, of the time spent in conferring with architects, builders and real estate men regarding the construction of buildings on the premises, and of the time she spent consulting with real estate men with regard to the sale or use of the property.

The evidence thus offered was excluded, subject to exceptions by the petitioner.

The petitioner was permitted to testify as to the amount of time that she had spent in consulting with architects, counsel, officials of the government, and others, in regard to the taking of the land by the city, and as to the amounts paid by her to counsel or real estate experts in connection with the taking by the city.

The petitioner was asked, "What do you consider that your loss has been by the action of the city council in taking this land?" And Charles A. Gleason, a real estate dealer and broker, whose qualifications as a real estate expert for Woburn and vicinity were admitted by the respondent, and who had testified that he was acquainted with the land in question in Woburn and its value, was asked, "What is your estimate of the loss to the petitioner by the action of the city council in that taking?" Both these questions were excluded, subject to exceptions by the petitioner.

It was agreed that from the time that this building was burned there had been no building erected upon the land, or any construction of any kind up to the date of trial and that the reason why a building had not been erected was because of the uncertainty as to the city completing its taking.

On the ruling of the judge that, upon the evidence offered by the petitioner, loss and expense must be confined to the plaintiff's loss of time and to amounts paid to counsel and to real estate men on account of the taking by the city, it was agreed that these three items amounted to $250. A verdict accordingly was returned for that amount; and the petitioner alleged exceptions.

*H. H. Newton,* (*C. A. Parker* with him,) for the petitioner.

*J. E. McConnell* (*J. F. Maloney* with him,) for the respondent.

DE COURCY, J. The petitioner owns a large lot of land on Union and Main streets in Woburn. In December, 1908, an order was duly adopted by the city to take a strip of this lot for the purpose of widening Union Street; but as the land was not entered upon to complete the taking, she became entitled to "indemnity for loss or expense incurred by the proceedings," by virtue of R. L. c. 48, § 69. The questions raised at the trial involve the construction of this statute.

The trial judge ruled that upon the evidence offered by the petitioner her "loss and expense" must be confined to her loss of time, and the amounts paid to counsel and to real estate men on account of the taking by the city, amounting in all to $250. Her contention is that she was entitled also to recover for the loss of rentals on a proposed building which she contemplated erecting on the premises and was deterred from erecting by reason of the order of taking; for the loss of opportunity to make sales of the land during the two years after the respondent's right to take possession accrued (R. L. c. 48, § 92); for money paid to architects for changes in the plans; and for the amount paid by her during the two years for taxes on the whole lot, or at least on the part covered by the taking.

The main controversy between the parties relates to the significance and scope of the word "loss" in § 69 of the statute; and that must be ascertained, not by analyzing the comprehensive and different definitions of the word, but by determining the sense in which the Legislature used the word in this particular connection. A brief reference to the history of the statute may aid us in interpreting the legislative intent. See *Sears* v. *Nahant,* 215 Mass. 234.

Before 1842, when a public way once was established, both the right of the public to a permanent easement and the right of the

landowner to damages became vested, and the owner became entitled to his damages although his land never was entered upon and although the way had been discontinued without ever being used by the public. *Harrington* v. *County Commissioners*, 22 Pick. 263. *Hallock* v. *Franklin*, 2 Met. 558. Presumably it was in consequence of such decisions that the St. of 1842, c. 86, § 1, was passed, by which it was enacted that no person claiming damage should have a right to demand the same until the land had been entered upon and possession taken for the purpose of constructing a highway; and further, that when put to "any trouble and expenses" by the proceedings, he should be allowed full indemnity therefor, although his land might not be entered upon or taken possession of. The history of the subsequent extension of the statute, and of the provision that the layout or alteration should be void as against the owner of the land unless possession should be taken within two years, is traced in *Corey* v. *Wrentham*, 164 Mass. 18, 22.

The case of *Whitney* v. *Lynn*, 122 Mass. 338, arose under Gen. Sts. c. 43, §§ 14, 63, which retained the words "trouble and expense" of the original statute of 1842. Under the charge of the judge of the Superior Court the petitioner was allowed to recover, among other things, for the uncertainty as to whether the land was to be entered upon by the city or not, in which he had been kept during the two years from the taking. In setting aside the verdict this court used the following language: "The word 'trouble' in the statute refers to trouble from which some material or pecuniary injury results, involving labor and the expenditure of time, or occasioning inconvenience to the owner in the use and occupation of the land; all of which may be estimated in damages by a standard common to all cases." While it is true that in R. L. c. 48, § 69, the word "loss" is substituted for "trouble," which was used in the earlier revisions, it does not appear that the Legislature intended to make any change in the elements of damage from those defined in the Whitney case.

In the case at bar the petitioner was allowed compensation for the expenses she incurred and for the time she lost on account of the taking by the city. Her control over and her use and occupation of the land was not interfered with by the city while the proceedings were pending. If there had been buildings thereon she and not the city would have been entitled to the rents. The only

compensation ordinarily allowed for the delay in payment until possession is taken by the city and for the trouble occasioned by the incipient appropriation of the land to public use, is that of interest. *Edmands* v. *Boston,* 108 Mass. 535, 551. It is not to be assumed that a municipality, in dealing with one of its own tax payers, will defer the entry and keep the owner in suspense for the full two years unless it honestly intends to take possession of the land and to pay the owner therefor. Nor is it contended here that the city acted otherwise than in good faith and in the exercise of its legal rights. If it had carried out the contemplated street widening, it would have been obliged to pay to the plaintiff only the value of the land taken and the damage to her remaining land consequent on the taking, with interest. The contention that now, although the city has not actually taken her land, it must pay her the speculative profits that she might have derived from a building that she intended to erect thereon, finds no support in the language or the spirit of the statute. The payment of the taxes was rightly borne by her, as she had the exclusive use of the land during the entire period. The expense for plans which would be available only in the event that the city should not complete its taking, does not come within the statute. In this respect the situation of the plaintiff is not unlike that of a gas company after the passage by a municipality of the first vote to acquire its plant. See St. 1891, c. 370, § 12, as amended by St. 1893, c. 454, § 5. Practically the company makes additions at the risk of not being paid for them in the event of a purchase by the city; and it may refrain from making improvements on account of the uncertainty as to final action of the municipality. There are doubtless other instances where the exercise of a public right to take the property of an individual may at times result in delay and uncertainty that are detrimental. But it rests with the Legislature to determine the necessity and provide the remedy for such exceptional instances.

Plainly the broad question asked of the petitioner and the expert, as to the loss she sustained by the action of the city council, was incompetent. The only elements of damage that were material were those contemplated by the statute.

*Exceptions overruled.*