MAYOR AND ALDERMEN OF TAUNTON, petitioners.

Bristol.    February 8, 1934. — March 6, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, & DONAHUE, JJ.

*Railroad,* Grade crossing: abolition. *Eminent Domain. Statute,* Repeal.
    *Words,* "Taking."

Under the provisions of St. 1906, c. 463, Part I, §§ 36, 37, the mere confirmation by a decree of the Superior Court of a report of a special commission to the effect that a grade crossing of a railroad ought to be abolished and that specified land should be taken for the purposes of the abolition, not followed by an entry upon the land or the doing of any work of abolition thereon, did not divest the landowner of his title; entry upon the land for the purpose of doing the work of abolition was necessary to complete the appropriation of the land to public use.

The mere fact that the relief afforded by R. L. c. 48, §§ 13, 69, for loss or expense incurred in proceedings with respect to public ways was not afforded in the provisions of St. 1906, c. 463, relating to the abolition of grade crossings of railroads did not make such provisions invalid.

In the circumstances above described, damages could not be awarded to the landowner under the provision found both in § 40 of St. 1906, c. 463, Part I, and in G. L. c. 159, § 79, conferring jurisdiction in equity to "issue and enforce such interlocutory decrees and orders as justice may require" in proceedings for the abolition of grade crossings of railroads.

Where such landowner in 1932 sought damages under the provision above quoted by filing a petition to intervene in the proceedings, commenced in 1909, for the abolition of the grade crossing in question, he was not entitled to relief for the further reason that such provision had been omitted from the statutes respecting the abolition of grade crossings in the modifications thereof made by St. 1930, c. 417, operative September 1, 1930, and applicable to such proceedings because no work of abolition had been commenced on the crossing in question previous to that date; it having become apparent in 1926 that the abolition of such crossing would not be carried out in accordance with the report of the special commission and the decree entered thereon (in 1913) and that the landowner was not entitled to damages under § 37 of St. 1906, c. 463, Part I; G. L. c. 281, § 4, he had had ample time before September 1, 1930, to seek relief under such provision omitted by St. 1930, c. 417, and said c. 417 was not beyond the competency of the General Court nor invalid as applied to his petition to intervene.

PETITION, filed in the Superior Court on March 11, 1909, for the abolition of a grade crossing in Taunton.

Proceedings previous to March 8, 1932, are described in the opinion. On that date The Kidder Peabody Acceptance Corporation filed the petition to intervene described in the opinion. The petition was denied by *Hanify*, J., who reserved and reported his action for determination by this court.

*T. Hunt*, for The Kidder Peabody Acceptance Corporation.

*M. Jenckes*, for New York, New Haven and Hartford Railroad Company.

*J. E. Warner*, Attorney General, & *E. T. Simoneau*, Assistant Attorney General, for the Commonwealth, submitted a brief.

RUGG, C.J. The mayor and aldermen of Taunton in 1909 filed a petition in the Superior Court for the abolition of certain grade crossings. The matter was referred, under St. 1906, c. 463, Part I, §§ 29–45, relating to abolition of crossings, then in force, to a special commission whose report to the effect that certain grade crossings ought to be abolished was confirmed by the court by decrees dated June 10, 1913, and October 1, 1914. That commission reported that a substantial area of land then owned by the predecessor in title or assignor of The Kidder Peabody Acceptance Corporation should be taken for carrying out the scheme of abolition. No work of abolition was begun and in 1914 the original petitioners requested an order to compel the railroad corporation to begin the work of abolition. A decree was entered on February 6, 1917, that the railroad corporation commence the work in one year and complete it within three years and a half from that date, but exceptions were filed and an appeal was taken from that decree and a reservation and report of the questions involved are still pending. Meanwhile, on a bill of review filed by the New York, New Haven and Hartford Railroad Company, the earlier decrees of 1913 and 1914 were reversed on May 26, 1926, and it was ordered that the case stand for further proceedings. See *Boston & Maine Railroad* v. *Greenfield*, 253 Mass. 391.

The Kidder Peabody Acceptance Corporation in 1923 filed a petition for the assessment of damages for land taken by the 1913 decree. That petition was dismissed in 1926 as prematurely brought because under St. 1906, c. 463, Part I, § 37, in effect at the time of the taking, the remedy provided for damages caused by such a taking was to be had by petition "brought within one year after the time the property is entered upon and work actually begun thereon," and it was agreed that there had been no entry upon the land and no work of abolition had begun. *Kidder Peabody Acceptance Corp.* v. *Old Colony Railroad*, 256 Mass. 41.

Nothing more was done until March 8, 1932, when a petition to intervene in the original proceedings was filed by The Kidder Peabody Acceptance Corporation. The questions now before us arise on this petition. It contains allegations that the petitioner subsequently to the 1913 taking acquired from the former owner of the land so taken, what remained of that realty together with its right to recover damages on account of the taking; that title to the land in question at and prior to the decree of 1913 was in a corporation and that by mesne conveyances it came to the petitioner to intervene in 1921 together with assignment of right to recover damages for the taking of land for abolition of the grade crossings. It contains specifications of the damages sustained and prayers that the petitioner be admitted a party in the cause and recover those damages from the parties chargeable in accordance with the provisions of St. 1906, c. 463, Part I, §§ 29–45. At the hearing upon this petition it was agreed that no actual work of abolition had ever been done in accordance with the 1913 and 1914 decrees. A decree was entered "that the petition be and hereby is denied as a matter of law and not as a matter of discretion." The trial judge reported the questions of law raised by the petition for determination by this court.

The decree of the court in 1913 contained a clause to the effect that the report of the special commission providing for the abolition of the grade crossings and the taking of

the land in question "be and the same is hereby accepted and confirmed" except as to one matter, not here material. It was provided by St. 1906, c. 463, Part I, § 36 (repealed by G. L. c. 282) that a decree of the court confirming a decision of the special commission to the effect that the location of a railroad be changed "shall constitute a taking of the specified land, easement or other property."

Extensive modifications were made in the law as to abolition of grade crossings by St. 1930, c. 417. (See St. 1934, c. 357.) Original jurisdiction over the subject was thereby vested in large measure in the department of public works, and the sections of the General Laws corresponding to the sections of the statute under which the petition was filed in 1909 and was prosecuted were either modified or repealed. By § 14 the act became operative on September 1, 1930, with a proviso that it should "not apply to any grade crossing on which any actual work of abolition has been commenced prior to" that date, with an exception not here relevant.

The provisions of the governing statute already quoted at the crucial times here pertinent were that the decree of the court confirming the report of the special commission describing land to be taken constituted a taking of the specified land and that a petition for the assessment of damages could be brought only within one year after the time the property is entered upon and work actually begun thereon. These two provisions must be construed, if reasonably practicable, so as to make an harmonious, consistent and effective body of law. These provisions mean that there can be no recovery of damages by the landowner until there has been an entry upon the land. That was decided as to the land here in question by *Kidder Peabody Acceptance Corp.* v. *Old Colony Railroad,* 256 Mass. 41. The mere paper taking of land gives no right to damages. It cannot be presumed that the General Court intended that such a paper taking not followed by work of actual construction should constitute a divestment of the title of the owner of the land and a transfer of such title to the railroad corporation or municipality,

because no provision was made for damages in that event. An absolute transfer of such title complete in itself by the entry of the decree would not be constitutional without a provision for damages.  It is required by art. 10 of the Declaration of Rights that "whenever the public exigencies require that the property of any individual should be appropriated to public uses, he shall receive a reasonable compensation therefor."  *Brickett* v. *Haverhill Aqueduct Co.* 142 Mass. 394, 396.  *Boston & Lowell Railroad* v. *Salem & Lowell Railroad*, 2 Gray, 1, 35.  *Connecticut River Railroad* v. *County Commissioners*, 127 Mass. 50, 52.  *Lincoln* v. *Commonwealth*, 164 Mass. 368, 375.

The power to seize private property for a public use has been conferred in a great variety of words and by some diversity of means.  The word "taking" as applied to the exercise of the power of eminent domain has different meanings and may be accomplished by divers methods. Sometimes a physical act of seizing possession alone is enough.  Sometimes that act must be followed by placing some instrument on a public record as a condition subsequent.  Sometimes the filing of a paper taking in the registry of deeds alone passes title.  See *Turner* v. *Gardner*, 216 Mass. 65, for a review of cases.  *Byfield* v. *Newton*, 247 Mass. 46, 56–57.  *Breckwood Real Estate Co.* v. *Springfield*, 258 Mass. 111.  *Choate* v. *Sharon*, 259 Mass. 478.  *Radway* v. *Selectmen of Dennis*, 266 Mass. 329, 334.  The kind of taking which arises when a paper record has been made without actual entry under statutes similar to St. 1906, c. 463, Part I, §§ 36, 37, has been described as an "incipient appropriation of the land to public use" in case the public work is finally constructed.  *Edmands* v. *Boston*, 108 Mass. 535, 551.  *Munroe* v. *Woburn*, 220 Mass. 116, 121.  This is a strictly accurate description.  The paper taking is merely a first step in the exercise of eminent domain and not a final act.  The appropriation of the land to public use does not become complete until finished and consummated by entry upon the land for the purpose of construction of the public work.  The landowner in the meantime is entitled to the use of the land, which is deemed

by the law to be sufficient compensation to the owner for the delay in assessing damages. *Norcross* v. *Cambridge,* 166 Mass. 508, 511. Many statutes of this general nature have been enacted apparently based on experience of the inequitable situation which without such provision had arisen whereby a landowner was allowed to receive and keep damages although no public use of the land was ultimately made. *Corey* v. *Wrentham,* 164 Mass. 18, and cases reviewed. *Main* v. *Plymouth,* 223 Mass. 66, 67. *Harrington* v. *County Commissioners,* 22 Pick. 263. See also *Hay* v. *Commonwealth,* 183 Mass. 294; *Imbescheid* v. *Old Colony Railroad,* 171 Mass. 209. There are cases where the landowner has been held not entitled to relief even though after a paper taking no entry has been made upon the land. *Drury* v. *Boston,* 101 Mass. 439. *Everett* v. *Fall River,* 189 Mass. 513. The relief afforded by R. L. c. 48, §§ 13, 69, by indemnity for loss or expense incurred in the proceedings is not found in St. 1906, c. 463. That, however, is not essential to the validity of the statute because, as already pointed out, there was no completed taking such as entitled the landowner to damages. This interpretation of the governing statutes distinguishes the case at bar from *Hellen* v. *Medford,* 188 Mass. 42, where under the terms of the governing statute there was a complete and absolute taking vesting full title in the city by the filing of the paper taking without the necessity of entry upon the land taken or the doing of work thereon: therefore, in that case, the circumstance that there was no entry upon or use of the land taken was immaterial. In the case at bar there was merely an incipient appropriation of the land never brought to the completion of transfer of title by the further necessary act of entry upon the land.

The diversity of statutes on this subject previously existing has been rendered much more uniform by G. L. (Ter. Ed.) c. 79. *Watertown* v. *Dana,* 255 Mass. 67, 71. *Malinoski* v. *D. S. McGrath, Inc.* 283 Mass. 1, 8.

The petitioner to intervene contends that relief ought to be afforded it under St. 1906, c. 463, Part I, § 40, whereby jurisdiction in equity was conferred in proceedings of this

nature to "issue and enforce such interlocutory decrees and orders as justice may require." It relies upon *Middleborough* v. *New York, New Haven & Hartford Railroad*, 179 Mass. 520. That was a case where land was taken from the town for a public way in connection with a grade crossing abolition so that the anomalous situation was created where to pursue the literal terms of the statute the town would be both petitioner and respondent in a proceeding to assess damages. It was held that that section might be invoked under those circumstances where the town was plainly entitled to damages. In the case at bar the statute makes no provision for damages in the circumstances disclosed. The case at bar upon this point is controlled by *Lancy* v. *Boston*, 185 Mass. 219, where a landowner who had not brought his petition for damages in accordance with the grade crossing abolition statute was denied the right to amend it into equity.

The same result must be reached on another ground. If it be assumed that the petitioner had some right under St. 1906, c. 463, Part I, § 40, it is not now available. The petitioner is seeking relief under a statutory provision which has been repealed. As already pointed out, the previous statutes respecting abolition of grade crossings were modified or repealed by St. 1930, c. 417. The petition to intervene was filed about one and one half years after the effective date of that act. The proceedings instituted by the original petition do not fall within the exceptions specified in its § 14. Circumstances might exist whereby, in order to save the constitutionality of the statute, an exception might be read into the repealing section. *Manchester* v. *Popkin*, 237 Mass. 434. That is not permissible in the case at bar. It became apparent when the bill of review was granted in 1926 that the abolition of the grade crossing according to the scheme reported by the special commission and embodied in the decree of 1913 would not be carried into execution. The decision in *Kidder Peabody Acceptance Corp.* v. *Old Colony Railroad*, 256 Mass. 41, was rendered in May, 1926. There was ample time for the petitioner to intervene to have at-

tempted relief under the previous statutes before St. 1930, c. 417, became effective. If that statute be regarded as a shortening of the statute of limitations with respect to the petitioner to intervene, it allowed ample time for the petitioner to protect its rights and would be valid. *Mulvey* v. *Boston*, 197 Mass. 178. *Cunningham* v. *Commonwealth*, 278 Mass. 343, 345.

Grade crossing abolition can be regulated from time to time by the General Court and changes wrought in existing statutes and made applicable to pending cases. *In re Petition of Mayor & Aldermen of Northampton*, 158 Mass. 299. It follows that the enactment of St. 1930, c. 417, with its consequent effect on the case at bar was within the competency of the legislative department of the government. Proceedings cannot be brought or maintained under a statute which has been repealed.

The result is that it is apparent on the face of the record that the petitioner to intervene cannot prevail. No basis for the maintenance of his petition is disclosed. The summary dismissal of the petition was without error. *Check* v. *Kaplan*, 280 Mass. 170. The decree denying the petition to intervene is affirmed.

*Ordered accordingly.*