MOSES WILLIAMS & others, trustees, *vs.* CITY OF BOSTON.

Suffolk.　March 7, 1911. — April 4, 1911.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Tax*, Abatement, Assessment. *Partnership.　Trust.*

On an appeal under St. 1909, c. 490, Part I. § 76, from a refusal of the assessors of a city to abate a tax, it appeared that the petitioners were the trustees of a real estate trust represented by shares, who seven years before the assessment of the tax had made a contract for the purchase of certain real estate from a museum corporation, and that the tax of which an abatement was sought was upon $1,500,000, which had been advanced to the museum corporation by the petitioners in part payments under the terms of the contract. It was provided in the contract that the petitioners should not receive the title to the real estate until all of the purchase money had been paid, and that in the final adjustment of payments between the parties the museum corporation should pay interest on all sums thus received by it at the rate of four and one quarter per cent per annum. At the time of the assessment the title to the property was still in the museum corporation. It was contended by the respondent that the advance payments in the hands of the museum corporation at the time of the assessment were loans from the petitioners which were taxable to them as "money at interest." *Held*, that the part payments when made became the property of the museum corporation, and that the fact that interest was to be allowed on them from the time of each payment did not convert them into loans; so that

they could not be taxed to the petitioners and the attempted tax on them should be abated.

The holders of transferable certificates representing shares in personal property, which is held and managed by trustees, without incorporation, although the trust agreement provides that neither the shareholders nor the trustees shall be liable personally for the debts of the trust, are partners within the meaning of R. L. c. 12, § 27, (St. 1909, c. 490, Part I. § 27,) and are to be taxed as such shareholders jointly under the partnership name in the place where the business of the partnership is carried on. Consequently they are not to be treated for purposes of taxation merely as _cestuis que trust_, whose interests would be assessed under R. L. c. 12, § 23, cl. 5, (St. 1909, c. 490, Part I. § 23, cl. 5,) in the different places where they resided, if within the Commonwealth.

KNOWLTON, C. J. This is a complaint in the nature of an appeal, under the provisions of St. 1909, c. 490, Part I. § 76, from the refusal of the assessors to abate a tax assessed to the petitioners.* The principal question is whether the petitioners, who are the trustees of the Copley Square Trust, were assessable for the year 1909, for an interest in the Museum of Fine Arts, or for money advanced as part payments of the purchase price of it under an agreement made on April 22, 1902. In accordance with the terms of this agreement, a deed of the property was made by the selling corporation and was delivered to a trust company as an escrow, to be delivered to the petitioners when the price was fully paid, or when, at the option of the petitioners, the deed should be demanded by them and their note, secured by a mortgage of the land, should be given as security for the balance of the purchase money, together with a lease to the vendor for a term ending at the time fixed for the payment of the last instalment of the purchase money, but in no event earlier than June 20, 1907. The purchase price was $1,800,000, and the instalments were to be paid, $500,000 on June 20, 1902, $500,000 on June 20, 1904, $500,000 on June 20, 1906, and the balance, $300,000, on the delivery of possession, which, at the option of the vendor, might be either on June 20, 1907, or June 20, 1908, or June 20, 1909. This time was afterwards fixed by the corporation, hereinafter called the Museum, as June 20, 1909. Be-

---

* In the Superior Court the case was submitted upon an agreed statement of facts to _Hitchcock_, J., without a jury. He found that the petitioners were not entitled to an abatement and ordered that judgment should be entered for the respondent. At the request of the parties, he reported the case for determination by this court.

fore the time for the assessment of taxes for the year 1909, the petitioners had paid $1,500,000, in accordance with this agreement. There was also an agreement that, in the final adjustment of payments between the parties, the Museum should pay interest on all sums received by it or credited by it under an agreement of even date therewith, entitled " Agreement as to Lapse of Scrip " on account of the price, and on all sums received by it for costs and expenses under another provision, which provisions were incidental to and a part of the general transaction. These incidental provisions are not now material to our inquiry. The agreement of sale and purchase was carried out substantially according to its terms. The deed was made and was delivered as an escrow, but the legal title to and the possession of the real estate remained in the vendor until June 19, 1909.

It is plain that the real estate was not taxable as such to the petitioners for the year 1909, and no attempt has been made to tax them for it. After the contract was made and the first payment was advanced the petitioners held equitable rights in the land. *Felch* v. *Hooper*, 119 Mass. 52. But such rights are not taxable in this Commonwealth, and the respondent does not contend that they are.

Its contention is that the $1,500,000 which had been advanced in payment and upon which the Museum was to allow interest at the rate of four and one quarter per cent per annum was taxable under the statute as money at interest.* This contention presents the question whether, under the contract, the ownership of this money had passed to the Museum, so that the arrangement for the payment of four and one quarter per cent upon it was not as interest upon money then owned by the petitioners and put into the control of the Museum, to be held as a loan until the time for the delivery of the deed arrived, but rather as a compensation for the use of the property until the deed should be delivered and the possession transferred, or whether this payment was strictly as interest upon money belonging to the petitioners, and held by the Museum as their property until the time for the change of title to the real estate. We feel constrained to construe the contract as calling for payments in advance, which transferred the title to the money

* R. L. c. 12, § 4, cl. 2.   See *Sweetser* v. *Manning*, 200 Mass. 378.

absolutely to the Museum, and made the Museum the owner, not only of the legal title to the real estate by virtue of its deed which had not been delivered, but of the sums of money advanced in payment for it. After making these payments in advance, the petitioners had no longer any title to the money paid, nor any claim upon the Museum for it. No debt was created in their favor. Their equitable title was to the land. If they failed to perform their contract, the Museum might hold the money as forfeited, unless it elected to demand specific performance. Under this arrangement, the petitioners had no money at interest, within the meaning of the statute, even though a payment was to be made to them in the final settlement which is referred to in the contract as interest. It follows that they were not taxable for the money advanced under their contract, in part payment for the land, and that they are entitled to an abatement of the tax.

We have now to consider the extent of the abatement. The question arises from the fact that the petitioners are trustees of an association of shareholders in an enterprise for the purchase, improvement and management of real estate for gain. If their relation to the certificate holders was merely that of trustees and *cestuis que trust*, the interest of each beneficiary in the trust estate would be taxable in the city or town of his residence, if within the Commonwealth. St. 1909, c. 490, Part I. § 23, cl. 5. (R. L. c. 12, § 23, cl. 5.) If the certificate holders in this trust are partners within the meaning of section twenty-seven of the chapter just cited, their property was all taxable in the city of Boston, where their business was carried on.

There is no doubt that they are joint owners of the property, for whose joint benefit the business is being carried on, in which profits or loss will affect them all proportionally through the increase or diminution of the value of their respective interests in the trust. There is a provision in the agreement of trust that neither they nor the trustees are to be liable personally for the debts of the trust, and in this respect their relation to the business is like that which appeared in *Hussey* v. *Arnold*, 185 Mass. 202. In *Gleason* v. *McKay*, 134 Mass. 419, and in *Phillips* v. *Blatchford*, 137 Mass. 510, similar trust agreements were held to create partnerships. We do not think the provision exempting

the certificate holders from personal liability for debts should be held to defeat the application of this section to the trust as a partnership. The decisions already made hold that the transferable quality of their interests and other provisions for conducting the business, similar to those of corporations, do not prevent their relation from being that of partners. In the leading and substantive features that distinguish ordinary partnerships, this association is within the spirit and meaning of the law of partnership. The limitations upon the power and liability of individual members and the attempt to avail themselves of many of the privileges of stockholders in corporations relate more to details and to the machinery of management than to the substantive purposes of the enterprise.

There are reasons of policy why the members should be held to be partners within the meaning of this section, for as such trusts are not regulated by statute, and no returns are required of them, interests in them held by non-residents of the city or town where their business is conducted would be liable to escape taxation unless the property is taxed in the firm name.

We are of opinion that all the personal property of the trust was rightly taxed in the city of Boston, and that the abatement should be allowed only by reason of the tax upon property in the hands of the Museum of Fine Arts.

*Order for abatement accordingly.*

*J. B. Warner & C. A. Williams,* for the petitioners.

*T. M. Badson,* for the respondent.