COMMISSIONER OF CORPORATIONS AND TAXATION *vs.* HENRY HORNBLOWER & others.

Suffolk. October 8, 9, 1936. — December 5, 1936.

Present: CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Tax*, On income.

Losses by a stockbroker in a tax year from bad debts owed by customers for loans on margin accounts could not be deducted from business income under § 6 (f) of G. L. (Ter. Ed.) c. 62.

APPEAL, filed in the Supreme Judicial Court for the county of Suffolk on April 30, 1936, from a decision by the Board of Tax Appeals ordering the abatement of an income tax.

*J. J. Ronan*, Assistant Attorney General, for the commissioner of corporations and taxation.

*E. C. Park*, for the taxpayers.

PIERCE, J. This is an appeal (under G. L. [Ter. Ed.] c. 58A, § 13, as amended, so far as now material, by St. 1933, c. 321, § 7) by the commissioner of corporations and taxation from a decision by the Board of Tax Appeals granting an abatement of $13,098.81 to a partnership known as Hornblower and Weeks, upon an income tax return filed in 1931, upon the income received during the year 1930.

The facts in a condensed form are as follows: The tax return of Hornblower and Weeks (hereinafter called the brokers) for the year 1930 included an item of $907,002.47 under "Losses during the year from fire, theft, etc. (not compensated for by insurance)." This item, for the purposes of this appeal, in fact represented losses sustained by the brokers from the purchase and sale of securities for

customers on margin in the year 1930. The tax commissioner disallowed this item claimed as a deduction against business income, but allowed it against net gains from the purchase and sale of intangible property. At the hearing before the Board of Tax Appeals, the brokers abandoned their original contention and took the position that this item should be deducted from gross receipts in ascertaining gross income and before making any deduction from said gross income. A majority of the board allowed this item as a deduction for bad debts against business income.

The pertinent statutes involved are the various sections of G. L. (Ter. Ed.) c. 62. By § 1 thereof, interest and dividends received by the taxpayer from certain sources are taxable at the rate of six per cent. Section 2 reads as follows: "From the income taxable under the preceding section, the taxpayer may, under the conditions prescribed in this section and section seven, receive a deduction on account of interest paid by him during the year on debts of the following classes: (*a*) Debts, except those secured by mortgage or pledge of real estate or tangible personal property, owed by persons engaged in the business of buying, selling, or otherwise dealing in intangible personal property, provided that such business, if it includes other classes of dealings, does not include buying, selling, improving or otherwise dealing in or with real estate or buying, selling, manufacturing or otherwise dealing in or with tangible personal property other than gold bullion. (*b*) Debts owed by other persons, except debts secured by such mortgage or pledge and debts on account of which the taxpayer is entitled to claim a deduction under sections five and six. Said deduction shall be allowed, in respect of interest on any debt belonging to class (*b*) above enumerated arising from loans or open accounts directly or indirectly secured by intangible personal property, only to an amount not exceeding eighty per cent of the income returned by the taxpayer for taxation under section one on account of intangible personal property which secured such loans or open accounts. Persons described in paragraph (a) of this section may, if the deduc-

tions allowed by subsections (*a*), (*b*), (*c*), (*d*), (*e*) and (*f*) of section six exceed the total income taxable under subsections (*b*) and (*c*) of section five, deduct from their taxable interest and dividends, after deducting the aforesaid interest deduction, an amount of such excess which bears the same proportion to the total excess as their income taxable under section one bears to their total net income as determined under section three." Section 5 provides in part: "Income of the following classes received by any inhabitant of the commonwealth during the preceding calendar year shall be taxed as follows: . . . (*b*) The excess over two thousand dollars of the income, as defined in section six, derived from professions, employment, trade or business shall be taxed at the rate of one and one half per cent per annum. . . . (*c*) The excess of the gains over the losses received by the taxpayer from purchases or sales of intangible personal property, whether or not said taxpayer is engaged in the business of dealing in such property, shall be taxed at the rate of three per cent per annum." Pertinent parts of § 6 provide: "Income taxable under subsection (*b*) of section five shall be the gross income from the profession, employment, trade or business, in the year for which the income is computed, not including income exempt from taxation under this chapter or taxable hereunder otherwise than under said subsection (*b*), but including gains from the sale of capital assets, other than intangible personal property, employed therein; less the following deductions: (*a*) Expenses paid within the year in the profession, employment, trade or business, including the cost of ordinary repairs but not including personal or family expenses . . . . (*d*) Interest paid within the year on indebtedness of the person taxed incurred in connection with his profession, employment, trade or business; but no interest allowed as a deduction under section two shall also be allowed under this section. (*e*) Losses from the sale within the year of capital assets other than intangible personal property, and losses of capital assets other than stock in trade sustained within the year by fire, theft or other casualty . . . . (*f*) The amount of any debts receivable

arising from the conduct of the profession, employment, trade or business subsequent to December thirty-first, nineteen hundred and fifteen, determined by the person taxed to be worthless and actually charged off during the year; but no debts receivable shall be so charged off and deducted, unless they have previously been included as income in a return made under this chapter or corresponding provisions of earlier laws."

In the case at bar there appears to be no misunderstanding between the parties as to what the figures in the return represented. The sole controversy centers about the question as to whether the item respecting losses from bad margin accounts may, under G. L. (Ter. Ed.) c. 62, § 6, be deducted from business income and swell the total deductions under § 6; so that, under § 2, the excess of this deduction over business income and gains from dealing in intangible personal property may be used as a deduction to wipe out the interest and dividends reported by the brokers under § 1 of c. 62.

It is not disputed that the brokers' aggregate losses from all sources exceeded their aggregate gains from all sources. Under the method employed by the tax commissioner, of allowing the item to be deducted, not from business income, but from the excess of gains over losses in the purchase and sale of intangible personal property, all taxable interest and dividends would not be wiped out.

The controversy, reduced to its lowest terms, is, therefore, as to whether the item representing bad margin accounts may be deducted from income under § 6. The opinion of the board seems to rest on the assumption that receipts and expenditures for purchase and sale of securities will offset each other, or that income is received by a broker from any transaction for a customer which gives rise to a debt owed him by the customer. The board made the first of these assumptions, and allowed the item in question to be deducted as a bad debt under G. L. (Ter. Ed.) c. 62, § 6 (f). We are of opinion that the decision of the board cannot be supported. It is obvious that under

§ 6 (f) only those debts receivable which have previously been reported as income may be deducted. Consistently with such an interpretation of the statute, the tax commissioner's regulation 1010 provides: "The phrases 'bad debts' and 'losses from debts receivable' as used in these regulations are limited to debts arising from the sale of merchandise or services, and do not include debts arising from money loaned." In the case at bar the losses by the brokers were loans of capital assets, and they were not reportable as income since they were not debts receivable as income but debts receivable as principal. Compare *Beekman* v. *Commissioner of Internal Revenue*, 17 U. S. B. T. A. 643, 648. *Burke* v. *Commissioner of Internal Revenue*, 19 U. S. B. T. A. 743, 744.

As above stated, the matter for decision is whether the item in question may be deducted from the gross receipts, under G. L. (Ter. Ed.) c. 62, § 6, or whether it may be deducted at all. In support of the position that the item may not be deducted at all, it may be pointed out that the Massachusetts income tax law is not a general income tax law, but that it provides for separate taxes at different rates upon income from various sources. See *Tax Commissioner* v. *Putnam*, 227 Mass. 522, 531–532. *Knights* v. *Treasurer & Receiver General*, 237 Mass. 493, 495. In the case at bar it is not denied that the interest which the brokers obtained on account of loans to customers on margin accounts is taxable, under G. L. (Ter. Ed.) c. 62, § 1, as interest, at six per cent. It is clear that under §§ 1 and 2 of c. 62, no deduction is there allowed for bad debts receivable as principal, unless such debts constitute part of an excess of deduction over business income and gains from intangible personal property under §§ 5 and 6. If the Legislature had intended such debts to be deductible at all, the normal place for such deduction would have been directly under §§ 1 and 2, since interest there reported is a gain resulting directly from risk of capital by the broker. We are of opinion that the brokers in the present case are barred by the principle that one seeking an exemption

from taxation must clearly bring himself within the law allowing the exemption, and that they have failed so to do. *Boston Symphony Orchestra, Inc.* v. *Assessors of Boston*, 294 Mass. 248, 257.

It results that the entry must be

*Petition for abatement dismissed.*