PHILIP NICHOLS, executor, *vs.* COMMISSIONER OF CORPORATIONS AND TAXATION.

SAME *vs.* SAME.

ALDUS C. HIGGINS *vs.* SAME.

Suffolk. May 10, 1940. October 9, 1941. — June 30, 1943.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, DOLAN, COX, & RONAN, JJ.

Taxation, Income tax. *Interest. Statute,* Construction. *Words,* "Interest," "Money at interest," "Income," "Debt."

Interest, paid by the Federal government to a Massachusetts taxpayer, computed from the date of his payment of a Federal income tax and upon the amount of a judgment in his favor upon a claim for a refund of such payment, was taxable under G. L. (Ter. Ed.) c. 62, § 1 (a), as interest "from . . . money at interest."

A tax is not a debt.

Interest paid by a Massachusetts taxpayer to the Federal government upon the amount of a deficiency assessed to him in respect to a Federal income tax was not deductible under G. L. (Ter. Ed.) c. 62, § 2, as interest paid by him on a debt.

APPEALS by taxpayers from decisions of the Appellate Tax Board.

The Nichols cases were argued on May 10, 1940, before *Field,* C.J., *Lummus, Dolan, Cox,* & *Ronan,* JJ., and afterwards were submitted on briefs to *Donahue* & *Qua,* JJ.

The Higgins case was argued on October 9, 1941, before *Field*, C.J., *Donahue, Qua, Cox, & Ronan*, JJ., and afterwards was submitted on briefs to *Lummus & Dolan*, JJ.

*P. Nichols*, (*B. Morton* with him,) for Nichols, executor.

*O. V. Fortier*, Assistant Attorney General, for the Commissioner of Corporations and Taxation, in the first two cases.

*L. E. Green*, for Higgins.

*H. E. Magnuson*, Assistant Attorney General, for the Commissioner of Corporations and Taxation, in the third case.

FIELD, C.J.  These are three appeals respectively from three decisions of the Appellate Tax Board relating to liability to income tax.  G. L. (Ter. Ed.) c. 58A, § 13, as appearing in St. 1933, c. 321, § 7, as amended.  St. 1937, c. 400.  G. L. (Ter. Ed.) c. 62, § 45.  St. 1939, c. 451, § 24.  In two cases the appellant is Philip Nichols, surviving executor under the will of Charles H. Farnsworth, who died February 11, 1933, herein referred to as the testator. In the third case the appellant is Aldus C. Higgins.  The appellant in each case is herein referred to as the taxpayer. In the Nichols cases the taxes involved were assessed respectively upon income for the year 1937 and income for the year 1938.  In the Higgins case the tax involved was assessed upon income for the year 1937.

The appeals present somewhat related questions arising under the provisions of G. L. (Ter. Ed.) c. 62, §§ 1, 2. Material parts of these sections are as follows:  General Laws (Ter. Ed.) c. 62, § 1, imposes a tax upon income from certain intangibles, including in subsection (a), with exceptions not here applicable, "Interest from bonds, notes, money at interest and all debts due the person to be taxed." Section 2 provides that from "the income taxable under the preceding section, the taxpayer may," subject to certain conditions not requiring consideration here, "receive a deduction on account of interest paid by him during the year on debts of the following classes: . . . (b) Debts owed by other persons, except debts secured by such mortgage or pledge and debts on account of which the taxpayer is

entitled to claim a deduction under sections five and six."
(The words "other persons" mean persons "other" than
the persons described in subsection [a] of § 2.)

It properly is not contended in any of the present cases
that the taxpayer therein is not such a person as to be
within the terms of the statute. The matter in controversy
in each of these cases is whether interest received or paid
by such taxpayer is interest of such a kind as to be within
the statute, for the purpose of taxation as income in the
Nichols cases, and for the purpose of a deduction from tax-
able income in the Higgins case.

In the Nichols cases interest was received by the tax-
payer in the following circumstances: In the year 1937
the taxpayer obtained a judgment against the United States,
in substance, for a refund of money paid as Federal income
tax upon income of the testator for the year 1932, on the
ground that the testator was not liable for such tax. In
said year 1937 the United States paid to the taxpayer a
sum in satisfaction of this judgment together with $8,665.46
interest thereon. In the year 1938 the taxpayer also ob-
tained a judgment against the United States, in substance,
for a refund of money paid by the executor under the will
of · the testator as a Federal estate tax in excess of the
amount due for such tax. In said year 1938 the United
States paid to the taxpayer a sum in satisfaction of his
judgment together with $21,184.90 interest thereon. We
infer from the record, though the fact is not specifically
found, that in each instance interest was computed from
the date of payment, as a tax, of the amount refunded and
that the amount received by the taxpayer as interest in-
cluded interest accruing after the entry of the judgment.
See U. S. C., 1934 ed., U. S. C., Sup. IV, Title 26, § 1671.
The commissioner of corporations and taxation assessed to
the taxpayer a State income tax for each of the years 1937
and 1938 upon the interest received by him in these years
respectively upon the judgments here described. Abate-
ments of the taxes so assessed were refused by the com-
missioner, and the taxpayer appealed to the Appellate Tax
Board. In each case the Appellate Tax Board refused the

taxpayer's requests for rulings to the effect that such interest was not subject to taxation under the State income tax law, and from the decision of the Appellate Tax Board the taxpayer appealed to this court.

In the Higgins case interest was paid by the taxpayer in the following circumstances: In the year 1937 the taxpayer paid to the United States a deficiency assessed to him in respect to Federal income taxes upon business and other income received by him during the year 1934 together with interest thereon in the sum of $9,122.58. [1] This amount of $9,122.58 was claimed by the taxpayer in his income tax return as a basis for the limited deduction of interest paid by him from taxable interest and dividends, under the provisions of G. L. (Ter. Ed.) c. 62, § 2, of slightly more than $8,000. The commissioner disallowed the deduction to the extent of $8,030.35 and assessed an income tax accordingly without giving the taxpayer the benefit of this deduction. Application for abatement was made by the taxpayer and refused by the commissioner, and the taxpayer appealed to the Appellate Tax Board. The Appellate Tax Board decided against the taxpayer on the ground that the interest so paid by the taxpayer was not deductible, and from this decision of the Appellate Tax Board the taxpayer appealed to this court.

The questions for decision are whether in the Nichols cases the interest received by the taxpayer upon amounts paid in satisfaction of the judgments recovered by him against the United States was "Interest from bonds, notes, money at interest and all debts due the person to be taxed" within the meaning of G. L. (Ter. Ed.) c. 62, § 1 (a), and whether in the Higgins case the interest paid by the taxpayer to the United States upon the deficiency assessed to him upon his income not derived from professions, employments, trade or business was "interest paid by him . . . on debts" including "Debts owed by . . . persons" other than

---

[1] In view of the conclusion reached in this case the finding of the Appellate Tax Board that only $8,215.43 was paid as interest on Federal income taxes assessed on income of the taxpayer not derived from professions, employments, trade or business is immaterial.

the persons described in subsection (a) of G. L. (Ter. Ed.) c. 62, § 2, within the meaning of said section, not within the exception stated in subsection (b). (There is no contention that this taxpayer is not one of the persons described in said § 2, subsection [b], or that his obligation to the United States was within the exception described in that subsection.)

The amounts herein referred to as "interest" received by the taxpayer in the Nichols cases and the amount herein so referred to paid by the taxpayer in the Higgins case constituted "interest" within the meaning of this word as used in the governing statute. In *Sayles* v. *Commissioner of Corporations & Taxation*, 286 Mass. 102, 105, the court quoted from *Hayes* v. *Commissioner of Corporations & Taxation*, 261 Mass. 134, 136, the statement that the "word interest in its usual sense is the compensation fixed by the parties or allowed by law for the use of money or as damages for its detention," and said that, in construing G. L. (Ter. Ed.) c. 62, § 1 (a), "we think the word 'interest' should be taken in that usual sense." See also *Wolbach* v. *Commissioner of Corporations & Taxation*, 268 Mass. 365, 371. Clearly the word is used in the same sense in § 2. The "interest" here in question is "allowed by law" either as "compensation . . . for the use of money" or as "damages for its detention" — in this aspect of the case it is immaterial which. While the statute containing the word "interest" that is to be construed is the statute of the Commonwealth, some, though not decisive, weight rightly may be attributed to the use of the word (*Wolbach* v. *Commissioner of Corporations & Taxation*, 268 Mass. 365, 371) in the Federal statutes providing for the payment of the amounts here involved under the designation of "interest." By the terms of these statutes "interest" is to be "allowed and paid upon any overpayment in respect of any internal-revenue tax" (U. S. C., 1934 ed., see also U. S. C., Sup. IV, Title 26, § 1671 [a], [b]) and to be "assessed" and "paid" "upon the amount determined as a deficiency" of income tax (U. S. C., 1934 ed., Title 26, § 292), in the former instance "from the date of the overpayment" and

in the latter instance "from the date prescribed for the payment of the tax" or the first instalment thereof. Congress clearly regarded the amount so made payable by statute and denominated "interest" either as "compensation . . . for the use of money" or as "damages for its detention" within the ordinary meaning of the word "interest." And the Supreme Court of the United States in *Helvering* v. *Stockholms Enskilda Bank*, 293 U. S. 84, 86, held that the interest paid upon the amount of a tax refund fell within the classification "Interest on bonds, notes, or other interest-bearing obligations of residents, corporate or otherwise," as interest upon an "interest-bearing" obligation subject to taxation under the Revenue Act of 1926, c. 27, 44 U. S. Sts. at Large, 9, § 217 (a) (1), § 233 (b). See also *American Viscose Corp.* v. *Commissioner of Internal Revenue*, 56 Fed. (2d) 1033. *Seaside Improvement Co.* v. *Commissioner of Internal Revenue*, 105 Fed. (2d) 990, 994, relied on by the taxpayer in the Nichols cases, is not in conflict with the conclusion here reached. The question in that case was whether so called interest upon a condemnation award for property taken by the city of New York was taxable under the Federal income tax law as "ordinary income and not as capital gain." The court held that it was not taxable as "ordinary income" on the ground that additional sums paid to indemnify for delay in the payment of a condemnation award "are not considered normal interest but part of the compensation awarded for the property taken." The Federal statute providing for the payment of interest upon overpayments of internal revenue taxes under which the taxpayer in the Nichols cases was paid the amounts here in question treats such amounts as normal interest and such interest is held taxable under the Federal income tax law as ordinary income. *Helvering* v. *Stockholms Enskilda Bank*, 293 U. S. 84, 86. We conclude, therefore, that the amounts received and paid in the present cases and referred to in the record as "interest" constituted normal interest, that is, "interest" in the usual sense of the word, and consequently "interest" within the meaning of this word in G. L. (Ter. Ed.) c. 62, §§ 1 (a) and 2.

The Massachusetts income tax law, however, "is not a general income tax law, but . . . provides for separate taxes at different rates upon income from various sources." *Commissioner of Corporations & Taxation* v. *Hornblower*, 296 Mass. 201, 205. It is necessary, therefore, to determine in the Nichols cases whether the interest received by the taxpayer was interest from such a source as to constitute taxable income. And in the Higgins case it is necessary to determine whether the interest paid by the taxpayer was interest upon such a subject as to render such interest deductible from taxable income.

First. The Nichols cases. The interest received by the taxpayer in these cases constituted taxable income only if it was derived from a source described in G. L. (Ter. Ed.) c. 62, § 1 (a), as "bonds, notes, money at interest and all debts due the person to be taxed." Clearly this interest was not derived from "bonds" or "notes." The question to be determined, therefore, is whether it was derived from a source within the statutory description of "money at interest," or within the statutory description of "debts due the person to be taxed," or within both of these descriptions. See *Hale* v. *County Commissioners of Hampshire*, 137 Mass. 111, 115, where it was said of certain bonds that they were "'debts due,' and the money invested in them was 'money at interest.'"

The governing statute is to be construed in the light of its history and in connection with related statutes. Prior to the passage of St. 1916, c. 269 — the original income tax statute other than a statute taxing certain classes of income under the local property tax law (see St. 1909, c. 490, Part I, § 4, Fourth) — which contained in § 2 thereof the same phrase "Interest from bonds, notes, money at interest and all debts due the person to be taxed" as is now contained in G. L. (Ter. Ed.) c. 62, § 1 (a), the local property tax law provided that "personal estate for the purpose of taxation shall include," among other things, "Second, Money at interest, and other debts due the person to be taxed more than he is indebted or pays interest for; but not including in such debts due him or indebtedness from him any loan on

mortgage of real estate, taxable as real estate, except the excess of such loan above the assessed value of the mortgaged real estate." St. 1909, c. 490, Part I, § 4. This statutory provision was not repealed by the income tax law and has remained in the statutes until the present time. G. L. (Ter. Ed.) c. 59, § 4. But it was provided, in substance, by the income tax statute that property the income of which is taxed thereunder or would be taxed thereunder if the property yielded income should be exempt from taxation under the local property tax law. St. 1916, c. 269, § 11. See now G. L. (Ter. Ed.) c. 59, § 5, Twenty-seventh. There was also a provision in the original income tax statute (St. 1916, c. 269, § 21), continued, in substance (see G. L. c. 62, §§ 49–53), until repealed by St. 1931, c. 426, § 184, for the taxation of such property locally unless return was made under the income tax law.

In 1916 a special commission on taxation made a report in favor of legislation for the taxation of income and accompanied its report by a proposed statute. This proposed statute, in describing in § 2 thereof income from intangible property to be taxed, included the following: "Interest received from bonds, notes, money at interest *and other debts* due the person to be taxed" with exceptions not here material (italics supplied). The commission stated that the "proposed tax upon the income from intangible property is carefully defined in section 2 of the act. It applies to the income derived from the classes of property mentioned in paragraphs 2 and 3 of section 4 of Part I of chapter 490 of the Acts of 1909. Especially it applies to interest received from bonds, notes, money at interest and other debts due the taxpayer, and to dividends upon the shares of corporations, joint stock companies, and certain associations." House Document (1916) No. 1700. In the Legislature the committee on taxation to which was referred the report of the special commission reported a bill for an income tax in which the income from intangibles to be taxed thereunder included "Interest from bonds, notes, money at interest *and all debts* due the person to be taxed" with exceptions not here material (italics supplied). House Document

(1916) No. 2073. This committee on taxation made a further report containing a detailed explanation of the provisions of the bill in which it said: "Section 2 carefully defines the proposed tax upon income from intangible property. This tax applies to the income derived from the classes of property mentioned in paragraphs 2 and 3 of section 4 of Part I of chapter 490 of the Acts of 1909. Specifically it applies to interest received from bonds, notes, money at interest and other debts due the taxpayer, and to dividends upon the shares of corporations, joint stock companies, and certain associations." House Document (1916) No. 2118. The bill as enacted used the same phraseology with respect to "money at interest" and "debts" as was used in the bill as reported by the committee on taxation. And this phraseology has been retained until the present time. In *Wolbach* v. *Commissioner of Corporations & Taxation*, 268 Mass. 365, 371–372, a comparison was made between the language of the local property tax law (R. L. c. 12, § 4, Second, reënacted without change in St. 1909, c. 490, Part I, § 4, Second) and the income tax statute, saying that it "is to be noted that the words of the present governing statute [the income tax law] are slightly broader in that 'interest from . . . money at interest and all debts' are now made subject to the income tax. It is not necessary to consider what change of meaning, if any, was thereby wrought."

The committee on taxation, in explaining the proposed statute reported by it, apparently recognized no difference between the effect of the phrase therein relating to "money at interest" and "debts" and the effect of the phrase relating to this subject in the local property tax law. But the proposed income tax statute reported by the committee and enacted used different language relating to this subject from the language of the existing local property tax law. The words of the statute as enacted constitute the main source for the ascertainment of the legislative purpose (*Commonwealth* v. *Welosky*, 276 Mass. 398, 401), and the "plain meaning of a statute cannot be affected by resort to proceedings incident to its passage." *Allen* v. *Commissioner of Corporations & Taxation*, 272 Mass. 502, 508. The change

from "other debts" in the local property tax law to "all debts" in the income tax law must be regarded as having been made advisedly, and the words used in the income tax law must be given their natural meaning irrespective of the explanation of the committee on taxation as to the effect of the proposed statute. Whether or not the change in phrase had any other effect, at least it eliminated any basis for an implication from the words "other debts" used in connection with the words "money at interest" that the latter words applied only to a particular kind of debts and did not apply to anything that was not a debt.

The taxpayer urges that the words "money at interest" as used in the governing statute apply only to those sums that constitute a debt in favor of the taxpayer, relying upon *Williams* v. *Boston*, 208 Mass. 497, a case under the local property tax law. In *Wolbach* v. *Commissioner of Corporations & Taxation*, 268 Mass. 365, 371–372, however, the court said that that decision did not so hold with respect to the local property tax law and held under the income tax law that certain interest was taxable as "interest from . . . money at interest" and regarded it as immaterial whether such interest was taxable as "interest from . . . all debts due the person to be taxed." The words "money at interest" in the income tax statute, therefore, are not to be regarded as limited to "debts." Within the meaning of this statute there may be "money at interest" that does not constitute a debt — whatever may have been true under the local property tax law.

We think that the overpayments of taxes by the taxpayer constituted "money at interest" within the meaning of the governing statute (G. L. [Ter. Ed.] c. 62, § 1 [a]), whether or not they constituted "debts due the person to be taxed" within the meaning of that statute.

While, as in the case of the word "interest" already considered, the words "money at interest" occur in a statute of the Commonwealth and are so to be construed, the nature of the subject or source of the interest is to be determined by the Federal law. The right of a taxpayer to a refund of an overpayment of a Federal tax depends upon

Federal law. Such right of a taxpayer and his right to interest upon such an overpayment are founded upon a law of the United States and not upon a contract express or implied. *United States* v. *Emery, Bird, Thayer Realty Co.* 237 U. S. 28, 32. *Stone* v. *White*, 301 U. S. 532, 534. Such rights, on the other hand, are not founded upon a wrong or tort of the United States or of any of its officers or agents. "The statutes authorizing tax refunds and suits for their recovery are predicated upon the same equitable principles that underlie an action in assumpsit for money had and received." The use of such an action is "to recover upon rights equitable in nature to avoid unjust enrichment by the defendant at the expense of the plaintiff . . . . It is an appropriate remedy for the recovery of taxes erroneously collected . . . . Since, in this type of action, the plaintiff must recover by virtue of a right measured by equitable standards, it follows that it is open to the defendant to show any state of facts which, according to those standards, would deny the right." *Stone* v. *White*, 301 U. S. 532, 534–535. See also *Lewis* v. *Reynolds*, 284 U. S. 281, 283; *George Moore Ice Cream Co. Inc.* v. *Rose*, 289 U. S. 373, 378–379; *United States* v. *Jefferson Electric Manuf. Co.* 291 U. S. 386, 402–403. In the case last cited it was said that such statutes "proceed on the same equitable principles that underlie an action in assumpsit for money had and received. Of such an action it rightly has been said [quoting from *Claflin* v. *Godfrey*, 21 Pick. 1, 6]: 'This is often called an equitable action and is less restricted and fettered by technical rules and formalities than any other form of action. It aims at the abstract justice of the case, and looks solely to the inquiry, whether the defendant holds money, which *ex aequo et bono* belongs to the plaintiff.'" See *Rabinowitz* v. *People's National Bank*, 235 Mass. 102, 103. The denial of recovery of an overpayment on equitable grounds even if these grounds include voluntary payment of a tax by a taxpayer with full knowledge of the facts — as apparently they do not (see *Clift & Goodrich, Inc.* v. *United States*, 56 Fed. [2d] 751, 752; *Ohio Locomotive Crane Co.* v. *Denman*, 73 Fed. [2d] 408, 411;

*Cloister Printing Corp.* v. *United States,* 100 Fed. [2d] 355, 357; compare *Foote* v. *Cotting,* 195 Mass. 55, 63) — is not by reason of the absence of a tort or wrong on the part of the United States or of any of its officers or agents but because the taxpayer is not entitled in equity and good conscience to a refund and the United States will not be unjustly enriched at the expense of the taxpayer by the retention of the sum overpaid. *Stone* v. *White,* 301 U. S. 532, 534–535, 537.

Cases in the Supreme Court of the United States sometimes refer to an overpayment as an "exaction" (see *Miller* v. *Standard Nut Margarine Co.* 284 U. S. 498, 509) and to actions to recover overpayments as brought to recover taxes alleged to have been "illegally exacted" (*Phillips* v. *Dime Trust & Safe Deposit Co.* 284 U. S. 160, 164) or "wrongfully exacted" (*Lewis* v. *Reynolds,* 284 U. S. 281, 282), but in *Stone* v. *White,* 301 U. S. 532, 534, the court describes the action as brought "to recover a tax erroneously paid." The Federal statutes refer to suits or proceedings for the recovery of internal revenue taxes "alleged to have been erroneously or illegally assessed or collected." U. S. C., 1934 ed., see also Sup. IV, Title 26, §§ 1672–1673. But the "ultimate question presented for decision, upon a claim for refund, is whether the taxpayer has overpaid his tax." *Lewis* v. *Reynolds,* 48 Fed. (2d) 515, 516; *S. C.* 284 U. S. 281, 283. "An overpayment must appear before refund is authorized." *Lewis* v. *Reynolds,* 284 U. S. 281, 283. The fact that there was such an overpayment and not the manner by which it was brought about is the foundation of an action to recover the overpayment, although conceivably the circumstances in which the overpayment was made may be such as to preclude recovery thereof or recovery may be precluded by failure of the taxpayer to comply with statutory procedural requirements.

The system provided by the United States for the collection of customs duties and internal revenue taxes and for the refund of overpayments thereof has been described as a "system of corrective justice." *Snyder* v. *Marks,* 109 U. S. 189, 193–194. *Dodge* v. *Osborn,* 240 U. S. 118, 120–

121. So far as overpayments are concerned, this system is carried to the extent of permitting actions against the sovereign for the recovery thereof. As already pointed out, this system is based upon recognition by the United States that an amount overpaid by a taxpayer for taxes constitutes money of the taxpayer in the possession of the United States, and the provision for the payment of interest on such money from the date of the overpayment is a recognition that from this date the money of the taxpayer was in the possession of the United States.

Money of the taxpayer in the possession of the United States as the result of an overpayment of a tax, bearing interest from the date of such overpayment, is fairly within the meaning of the words "money at interest" in G. L. (Ter. Ed.) c. 62, § 1 (a).

The fact that the rights of the taxpayer with respect to such money and such interest are founded upon a law of the United States and not upon a contract express or implied does not seem to us a sufficient ground for excluding such money in the possession of the United States from the term "money at interest" as used in G. L. (Ter. Ed.) c. 62, § 1 (a). The actual situation rather than the manner in which it was created is the determining factor. The fact that in *Wolbach* v. *Commissioner of Corporations & Taxation*, 268 Mass. 365, 371, it was stated that the "matters" there under consideration "arise from a written contract" and that this and other described features "usually constitute the peculiarly distinguishing attributes of money at interest" does not import that a "written contract" is an essential attribute of money at interest though it is a usual attribute. The statement was made with respect to the facts of the particular case and was carefully confined to a statement as to usual rather than essential attributes. Obviously the statement does not import that a written rather than an oral contract is an essential attribute of "money at interest." No more does it import that a contract, either written or oral, is an essential attribute. In transactions with the government, State or Federal, rights may be created by statute that are similar in nature to, though differ-

ent in origin from, rights created in transactions between individuals by contract express or implied. The Federal statutes with regard to overpayments of internal revenue taxes recognize that the United States has in its possession money of the taxpayer and authorize its repayment with interest. These statutes give to such money in the possession of the United States the quality of "money at interest" within the meaning of G. L. (Ter. Ed.) c. 62, § 1 (a), as fully as would a contract to the same effect between the United States and the taxpayer.

In the *Wolbach* case, also, the fact that a person is "entitled to receive" interest "at a fixed rate payable at stated times" is referred to as a usual attribute of "money at interest." The taxpayer who has made an overpayment is entitled to interest at a fixed rate, but no time or times are stated for its payment other than the time of repayment of the tax. Whether or not the absence of a provision for payment of interest at intervals takes the present cases out of the statement in the *Wolbach* case, the statement is a statement of a usual rather than an essential attribute of "money at interest." Obviously "money" does not fail to be "at interest" merely because such interest is not to be paid until the "money" is repaid.

The *Wolbach* case, however, in distinguishing *Williams* v. *Boston*, 208 Mass. 497 — a case that arose under the local property tax law — pointed out an attribute of "money at interest" that ordinarily, if not always, is an essential attribute of "money at interest." In the *Williams* case partial payments were made by a vendee to the vendor of real estate in advance of the delivery of the deed. The court in the *Wolbach* case said: "These payments were held to belong absolutely to the vendor as and when made and to give rise to no claim therefor on the part of the vendee. Although there was provision in the agreement for payment of 'interest' at a specified rate on the money so paid by the vendor to the vendee in the final settlement, that was treated by the court as compensation for use of the property until the deed should be delivered and possession transferred, and not as interest on money due to the vendee."

Page 371. In other words, the "interest" paid by the vendor was not interest upon money of the vendee in the possession of the vendor, an ordinary, and probably, though we need not decide the point, a necessary, attribute of "money at interest." According to this explanation of the *Williams* case, the situation in that case was closely analogous to the situation in the condemnation proceeding considered in *Seaside Improvement Co.* v. *Commissioner of Internal Revenue*, 105 Fed. (2d) 990, 994, a case under the Federal income tax law, already discussed.

There have been decisions of this court to the effect that interest upon compensation for land taken by eminent domain — condemnation awards — was not interest upon "other debts due the person to be taxed" within the meaning of the local property tax law. *Lowell* v. *Street Commissioners of Boston*, 106 Mass. 540. *Powers* v. *Worcester*, 210 Mass. 471. Although in the former of these cases an additional ground for the decision was stated, in the latter case it was said that "still the fact remains that the claim for land damages is by reason of its special character not a debt within the meaning of our tax statutes until it has become fixed and receivable. And the [*Lowell*] case must be regarded as adopting and enunciating that principle. This decision was announced forty years ago. It was announced as the interpretation of a clause in a statute of wide application and of constant use in one of the most important functions of government, to wit, the money raising power. Since the decision the statute has been several times under the scrutiny of the law making power and many changes have been made in it, but none in the particular clause under consideration. Throughout all the changes the words 'other debts due the persons to be taxed,' etc., have remained. . . . However broad may be the term 'debt' (see *Woodbury* v. *Sparrell Print*, 187 Mass. 426, and cases cited), and whatever may be its meaning in other connections, and however close may have been originally the question whether, as used in our tax statutes, it included unliquidated damages for land taken, it must be held that since the Legislature in the various codi-

fications has used the term in the same identical connection as before, it has adopted the judicial interpretation given to it, namely, as not including such damages." Pages 473–474. No contention appears to have been made that unliquidated damages for land taken constituted "money at interest" within the meaning of the governing statute, and it was apparently assumed, doubtless properly, that they did not.

The decision in *Lowell v. Street Commissioners of Boston,* 106 Mass. 540, that compensation for land taken was not a "debt" within the meaning of the local property tax law was rested on the ground of the "special character" of a claim for compensation for land taken by eminent domain and also on the ground that such a claim was "uncertain" so that there was no "debt" "technically" (pages 542–543), following in that particular *Fellows v. Duncan,* 13 Met. 332. The nature of the "special character" of such a claim was not adverted to in either the *Lowell* or the *Powers* case, but this "special character" may well have been due, as pointed out in *Seaside Improvement Co. v. Commissioner of Internal Revenue,* 105 Fed. (2d) 990, 994, with respect to a condemnation award, to the fact that interest is a "part of the compensation awarded for the property taken." Whether this is the Massachusetts conception need not be considered in detail. It is enough to say that it has been recognized that the "reasonable compensation" to which a landowner is entitled for land taken under the Constitution of the Commonwealth, Part I, art. 10, ordinarily, and probably necessarily, includes compensation for delay in payment by way of interest or otherwise (see *Parks v. Boston,* 15 Pick. 198, 208; *Edmands v. Boston,* 108 Mass. 535, 550–551; *Old Colony Railroad v. Miller,* 125 Mass. 1, 3–4; *Munroe v. Woburn,* 220 Mass. 116, 121; *Seaboard Air Line Railway v. United States,* 261 U. S. 299, 306; *Jacobs v. United States,* 290 U. S. 13, 16–17), though, where there has been merely a formal taking not consummated by entry upon the land, the use of the land by the owner is deemed to be sufficient compensation to him for the delay in payment. *Norcross v. Cambridge,* 166 Mass. 508, 511. *Mayor*

*& Aldermen of Taunton, petitioners,* 290 Mass. 118, 122–123. The taxpayer's claims for repayment of overpaid taxes involved in the present cases have no such "special character" as to bring them within the *Lowell* and *Powers* cases.

The ground of "uncertainty" in a claim for compensation for land taken by eminent domain that was relied on in *Lowell* v. *Street Commissioners of Boston,* 106 Mass. 540, 542, was relied on to show that such a claim was not a "debt" "technically." Whether this ground of uncertainty would have been enough to support that decision or the decision in *Powers* v. *Worcester,* 210 Mass. 471, 474, if it were not for the "special character" of the claim, is not readily apparent. These cases, however, do not decide that an unliquidated claim could in no event be a "debt" within the meaning of the local property tax law. Indeed, there is some indication to the contrary in *Deane* v. *Hathaway,* 136 Mass. 129, 132–133, where the claim was not of a "special character" as is a claim for compensation for land taken. The claim in that case was against the estate of a decedent for services rendered. The court said: "It is contended that, as the claim was not for a definite and specific sum due by express agreement, but an unliquidated claim, the amount of which could only be ascertained by determining the value of Dearden's services, it was not a debt within the meaning of the statute relating to taxation. This construction of the statute is not satisfactory. A claim is not the less a debt because the exact amount due cannot be, at the time of the assessment, ascertained with mathematical accuracy. The difficulty of determining its value is not greater, probably, than that which attends the valuation of other property; and, if it be too highly rated, the same remedies exist that are found in other cases of overvaluation. So far as a debt is admitted by the debtor, at any rate, (as was the sum of $12,000 assessed to Dearden;) it certainly must be an appropriate subject of taxation. It cannot become otherwise because the creditor claims more than is admitted, and thus himself introduces an element of uncertainty. . . . In the case at bar, there was no dispute that a debt was due; all that was disputed was the amount,

and that was conceded to be as much as was assessed to Dearden. The tax upon $12,000 was therefore rightly assessed to William H. H. Dearden." Nothing was decided with respect to a claim that was disputed as to liability or amount.

Even if, however, a disputed or unliquidated claim is not within the meaning of the word "debts" in the local property tax statute, or in the income tax statute, it does not follow that the words "money at interest" in those statutes, particularly in the income tax statute — words that are not restricted to "debts" (*Wolbach* v. *Commissioner of Corporations & Taxation*, 268 Mass. 365, 371–372) — are limited to money the ownership or amount of which is not in dispute. On the contrary, we think that, as applied to the present cases, an overpayment of an internal revenue tax, which, under the Federal statutes as interpreted by decisions of the Supreme Court of the United States, constitutes money of the taxpayer in the possession of the United States bearing interest from the date of the overpayment, is not the less "money at interest" within the meaning of the Massachusetts income tax statute, because of a dispute or litigation over the existence or amount of such overpayment, that is, of the ownership or amount of money in the possession of the United States, provided the fact of the overpayment is ultimately established. A decision by an administrative officer of the United States or of a court establishing the fact of such overpayment does not create "money at interest" but rather determines that from the date of the overpayment there has been money of the taxpayer in the possession of the United States, which bears interest by force of the Federal statute, and consequently that "money" of the taxpayer had been "at interest" from that date. The judgments in favor of the taxpayer, involved in the present cases, to the effect that he was entitled to refunds of overpayments with interest, adjudicated that money belonging to him had been in the possession of the United States since the overpayments were made. Such money, bearing interest, constituted "money at interest" within the meaning of G. L. (Ter. Ed.) c. 62, § 1(a).

The conclusion here reached is in accord with the decision of the Supreme Court of the United States in *Helvering* v. *Stockholms Enskilda Bank*, 293 U. S. 84, 86, where it was held that a refund of Federal income taxes overpaid "upon which by express statutory direction interest must be paid" was an "interest-bearing obligation" within the meaning of a Federal income tax statute. Interest upon such a refund was required by statute to be paid from the date of the overpayment. Although reference was made in the opinion to the obligation "to make repayment" as being created by the decision of the commissioner of internal revenue that the tax had been "illegally or erroneously collected," there was no intimation that any part of the interest received by the taxpayer was not interest on an "interest-bearing obligation," even though it accrued before the decision of the commissioner. We think that the judgments involved in the present cases established as a fact the existence and extent of these obligations as of the dates of the overpayments respectively. Moreover, assuming that the question is presented by the record, the conclusion here reached is not affected by the fact that the refund in the case relating to the Federal estate tax was based in part upon occurrences after the overpayment of the tax.

It follows that the overpayments of taxes made by the taxpayer, which were adjudged to be overpayments, and which, consequently, the taxpayer was entitled to recover with interest, constituted "money at interest" within the meaning of G. L. (Ter. Ed.) c. 62, § 1 (a), from the dates respectively of such overpayments, and that the interest thereon from those dates respectively was interest subject to the income tax in the years respectively in which the refunds were received by the taxpayer. It is, therefore, unnecessary to determine whether such overpayments either before or after the judgments constituted "debts due the person to be taxed" within the meaning of G. L. (Ter. Ed.) c. 62, § 1 (a).

Within constitutional limitations the question whether an income tax is reasonable is for the Legislature and not for the courts. The conclusion that the interest upon the

refunds of overpayments of internal revenue taxes is subject to income tax clearly cannot be said to be so unreasonable as to call for an interpretation of the governing statute contrary to the natural interpretation of its words. The overpayments of taxes were in effect investments by the taxpayer — though not of his own choosing — yielding interest. . It cannot rightly be said to be unreasonable to treat such overpayments for purposes of taxation like other investments. The words "money at interest," as applied to sources of income, are to be interpreted as including every item that by any reasonable understanding can be regarded as within this meaning. *Tax Commissioner* v. *Putnam,* 227 Mass. 522, 526. *Commissioner of Corporations & Taxation* v. *Dalton,.* 304 Mass. 147, 148–149. Interest upon refunds of overpayments of taxes is within the broad definition of "income" as "the true increase in amount of wealth which comes to a person during a stated period of time." *Bingham* v. *Commissioner of Corporations & Taxation,* 249 Mass. 79, 80. *Commissioner of Corporations & Taxation* v. *Filoon,* 310 Mass. 374, 385.

The taxpayer makes no contention that the Commonwealth is without power to impose an income tax upon interest on refunds of Federal taxes, and we need not consider a question not deemed worthy of argument by the parties. *Commonwealth* v. *Dyer,* 243 Mass. 472, 508. *Soscia* v. *Soscia,* 310 Mass. 418, 420.

Second. The Higgins case. The interest paid in this case by the taxpayer to the United States upon a deficiency of Federal income tax assessed to him is deductible from his income taxable under the State income tax law only if it is within the description of "interest paid by him . . . on debts" within the meaning of G. L. (Ter. Ed.) c. 62, § 2. This phrase has not been changed since the income tax statute was first enacted in 1916 (St. 1916, c. 269, § 3), although there have been some modifications with respect to the classes of "debts" to which the provision is applicable. St. 1919, c. 286. St. 1921, c. 265.

The obligation of the taxpayer upon which he paid interest was an obligation to the United States to pay a

Federal income tax — a liability to a tax — and the matter to be determined is whether this obligation was a debt within the meaning of G. L. (Ter. Ed.) c. 62, § 2.

The word "debts" in the governing statute is to be construed in accordance with the statutory rule that "In construing statutes the following rules shall be observed, unless their observance would involve a construction inconsistent with the manifest intent of the law-making body or repugnant to the context of the same statute: . . . Third, Words and phrases shall be construed according to the common and approved usage of the language; but technical words and phrases and such others as may have acquired a peculiar and appropriate meaning in law shall be construed and understood according to such meaning." G. L. (Ter. Ed.) c. 4, § 6. This rule of construction is binding upon the courts. *Boston & Maine Railroad* v. *Billerica*, 262 Mass. 439, 444. *United States Trust Co.* v. *Commissioner of Corporations & Taxation*, 299 Mass. 296, 299.

The word "debt" or "debts" has acquired a "peculiar and appropriate meaning in law," and had acquired such a meaning when the income tax statute, of which the present statute is a continuation, was passed in 1916. Under the decisions in this Commonwealth a tax is not a "debt" although for certain purposes it may be treated as a debt. This matter was discussed fully in *Boston* v. *Turner*, 201 Mass. 190, 193–194, decided in 1909. The court there said: "A tax, however, has uniformly been held in this Commonwealth not to be a debt. Taxes are not the subject of set-off (except by statute), nor do laws against imprisonment for debt apply to them. *Peirce* v. *Boston*, 3 Met. 520. *Appleton* v. *Hopkins*, 5 Gray, 530. *Andover & Medford Turnpike* v. *Gould*, 6 Mass. 40, 44. Generally statutes of limitations do not run against taxes (except by specific enactment), *Hayden* v. *Foster*, 13 Pick. 492, *Howe* v. *Howe*, 179 Mass. 546, *Bradford* v. *Storey*, 189 Mass. 104, save where a special action in contract is given to the collector. See *Rich* v. *Tuckerman*, 121 Mass. 222. In construing the word 'tax' as used in the bankruptcy law of 1898, it was said in *New Jersey* v. *Anderson*, 203 U. S. 483, at page 492:

'Generally speaking, a tax is a pecuniary burden laid upon individuals or property for the purpose of supporting the government. . . . As was said . . . in *Meriwether* v. *Garrett*, 102 U. S. 472, 513, "Taxes are not debts. It was so held by this court in the case of *Oregon* v. *Lane County*, reported in 7 Wallace [page 71]. Debts are obligations for the payment of money founded upon contract, express or implied. Taxes are imposts levied for the support of the government, or for some special purpose authorized by it. The consent of the taxpayer is not necessary to their enforcement. They operate in invitum. Nor is their nature affected by the fact that in some states . . . an action of debt may be instituted for their recovery. The form of procedure cannot change their character."' We are aware of no case in which a tax has been called a debt. It has been termed a 'pecuniary imposition.' *Dunham* v. *Lowell*, 200 Mass. 468. Other authorities to the same point are collected in a footnote. [Here are cited numerous cases in other State courts.] It is clear that a tax, therefore, is not properly describable as a debt." See also *Attorney General* v. *East Boston Land Co.* 222 Mass. 450, 452. And see *Commissioner of Banks* v. *Highland Trust Co.* 283 Mass. 71, 74, where it was said: "Taxes are not commonly classified as debts. *Boston* v. *Turner*, 201 Mass. 190, 193. A 'tax does not create a contract. It is a unilateral act of superior power, not depending for its effect upon concurrence of the party taxed.' *Alabama* v. *United States*, 282 U. S. 502, 507." An occasional case can be found in which a tax has been referred to as a debt (see *Felker* v. *Standard Yarn Co.* 148 Mass. 226, 227; *Keen* v. *Sheehan*, 154 Mass. 208, 209), but, as appears from *Boston* v. *Turner*, 201 Mass. 190, and cases following it, the word "debt" is not ordinarily understood to apply to a tax in the absence of anything to show that the word was used with a different meaning. And this is true notwithstanding the fact that the word "debt" has been said to be a word of "large import" and has often been broadly construed. *Gray* v. *Bennett*, 3 Met. 522, 526. *Bowen* v. *Hoxie*, 137 Mass. 527, 531. *Union Market National Bank* v. *Gardiner*, 276 Mass.

490, 494–495. *Norwood Morris Plan Co.* v. *McCarthy*, 295 Mass. 597, 601. *Commissioner of Banks* v. *Walker*, 299 Mass. 123, 126–127.

With the meaning of the word "debts" as not including taxes so firmly established in this Commonwealth as by the case of *Boston* v. *Turner*, 201 Mass. 190, decided before the Massachusetts income tax statute (St. 1916, c. 269) was passed in 1916, it is to be assumed that the word was used with that meaning in § 3 of the statute, which has been continued without change in this particular and now appears as G. L. (Ter. Ed.) c. 62, § 2 (see *Tobey* v. *Kip*, 214 Mass. 477, 479; *Commissioner of Corporations & Taxation* v. *Boston Edison Co.* 310 Mass. 674, 689), unless such a construction would be "inconsistent with the manifest intent of the law-making body or repugnant to the context of the same statute." G. L. (Ter. Ed.) c. 4, § 6.

This construction of the word "debts" as used in G. L. (Ter. Ed.) c. 62, § 2, is not "inconsistent with the manifest intent of the law-making body or repugnant to the context of the same statute." While the statute discloses an intention to impose an income tax upon a wide variety of kinds of income derived from intangible property, it discloses an intention to allow only a limited class of deductions from such income. For example, no provision is made for the deduction from taxable income derived from intangibles of taxes paid upon such income, although express provision is made for the deduction of taxes from business income in G. L. (Ter. Ed.) c. 62, § 6. An intention to permit a deduction from taxable income derived from intangibles of interest paid upon taxes thereon is not to be attributed to the law making body when it did not provide for a deduction of such taxes. And an interpretation of the word "debts" in G. L. (Ter. Ed.) c. 62, § 2, as not including "taxes," with the result that interest paid on a deficiency of Federal income tax is not deductible, is not repugnant to the context of the statute. However equitable it might seem to permit such a deduction when interest on refunds of Federal income taxes is taxable as interest on "money at interest" under G. L. (Ter. Ed.) c. 62, § 1 (a), the denial of

such a deduction is not so repugnant as to call for a departure from the established meaning of the word "debts." The items are to some extent comparable. But the statute discloses no intention on the part of the Legislature that every amount paid by a taxpayer that is comparable in any degree to a taxable item shall be deductible. The Legislature used broader language to describe taxable items than it used to describe deductible items. In this situation the words used in the two statutory provisions respectively are to be interpreted in accordance with ordinary rules of construction without attempting to bring them into complete harmony.

The obligation of the taxpayer was not the less a "tax" within the scope of the decision in *Boston* v. *Turner*, 201 Mass. 190, because it was an obligation to the United States. As was said in *New Jersey* v. *Anderson*, 203 U. S. 483, 492, and quoted in *Boston* v. *Turner*, 201 Mass. 190, 193: "Generally speaking, a tax is a pecuniary burden laid upon individuals or property for the purpose of supporting the government. . . . As was said . . . in *Meriwether* v. *Garrett*, 102 U. S. 472, 513: 'Taxes are not debts. It was so held by this court in the case of *Oregon* v. *Lane County*, reported in 7 Wallace [page 71]. . . . Taxes are imposts levied for the support of the government, or for some special purpose authorized by it. . . . The form of procedure cannot change their character.'" The fundamental nature of the obligation is the same irrespective of the particular government by which it is imposed. The Federal income tax, though imposed by statute, is imposed in the exercise of the taxing power of the United States. Its fundamental nature is not determined by Federal statutes nor affected by Federal statutes providing for its collection by proceedings ordinarily applicable to debts. It is for us to interpret G. L. (Ter. Ed.) c. 62, § 2, in accordance with the laws of Massachusetts and the fundamental nature of the obligation. So interpreted, the deficiency in Federal income tax paid by the taxpayer was not a debt within the meaning of the section and interest thereon was not deductible from the taxable income of the taxpayer. This conclusion is not inconsistent

with what has been said in the Nichols cases with respect to the nature of the obligation of the United States to repay overpayments of internal revenue taxes which is created by statute.

It follows that in each case the petition for abatement must be dismissed.

*So ordered.*